UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

NORMAN N. SHELTON, :
:
    Plaintiff : No. 3:CV-11-1618
:
vs. : (Judge Nealon)
:
:
BRIAN A. BLEDSOE, et al., :
:
    Defendants :

**MEMORANDUM**

On August 30, 2011, Norman N. Shelton, an inmate confined in the United States Penitentiary, Lewisburg ("USP-Lewisburg"), Pennsylvania, filed the above captioned, combined, Bivens,[1] Federal Tort Claims Act ("FTCA") claim, pursuant to 28 U.S.C. § 2671, et seq., and class action lawsuit. Named as Defendants are the United States; the following twenty-one current or former employees of the Bureau of Prisons ("BOP"): T. Kane, J. L. Norwood, B.A. Bledsoe, C. Maiorana, D. Young, K. Bahre (identified in the Complaint as "Krista Rear"), J. Dunkelberger,

---

2. Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971).

-1-

J. Adami, J. Fosnot, F. Perrin, S. Heath, N. Dreese, K. Whittaker, R. Raup, S. Zeiders (identified in the Complaint as "Zelder"), B. Walls, L. Potter, G. Kulago, R. Fisher, H. Moffat (identified in the Complaint as "Moffit"), D. Coombe (identified in the Complaint as "Combe"); and unidentified John Doe correctional officers.

Shelton raises claims of deliberate indifference to his safety with regard to events surrounding a November 26, 2009[2] assault upon him by his cellmate, and claims regarding his resulting medical care. (Doc. 1, complaint). In addition, Shelton alleges that Defendants place "hostile" inmates together in cells and/or recreation cages with the knowledge that they will harm each other, Defendants improperly use restraints to force inmates to cell together,[3] and when the cellmates fight, Defendants will not intervene. Id. Shelton claims that he should represent a

---

[2]On February 21, 2012, the Plaintiff filed a stipulation to dismiss Counts One and Two of the complaint, regarding claims arising out of an August 30, 2012 assault. (See Doc. 24, Stipulation).

[3]Defendants' counsel posits that Plaintiff's counsel told him that Shelton is not pursuing an independent Eighth Amendment claim regarding use of restraints. (See Doc. 30, Statement of Material Facts, fn 4). Plaintiff does not refute this.

class of inmates that would allege similar violations. Id. Finally, Shelton sues the United States under the FTCA. Id.

Presently before the Court is Plaintiff's motion for class certification (Doc. 13). For the reasons set forth below, the Court will deny Plaintiff's motion for class certification.

## I   Background

Pursuant to Federal Rule of Civil Procedure 23, Plaintiff moves for an order certifying a class consisting of all persons who are currently or will be imprisoned in the Special Management Unit ("SMU") at USP-Lewisburg. (Doc. 13, Motion for Class Certification). Plaintiff states that the class period commences from the filing of the above-captioned action and continues so long as USP-Lewisburg officials and corrections officers persist in the unconstitutional policy of placing hostile inmates in double cells or recreational cages without taking any reasonable measures to protect the inmates from inmate-on-inmate violence, and using punitive restraints to enforce this policy. Id.

Plaintiff alleges that in 2008, the Bureau of Prisons created an SMU program at USP-Lewisburg. (Doc. 1, complaint at ¶ 31). The SMU program is "designed for inmates who are difficult to manage in typical high security institutions. These

include those who participate in or have leadership roles in geographical groups/gang related activity, or inmates who pose unique security or management concerns." (Doc. 14-4, Ex. C, U.S. Dept. of Justice, Federal Bureau of Prisons, State of the Bureau 2009: The Bureau's Core Values at 3). Plaintiff alleges that there are approximately 1,000 to 1,100 inmates in the SMU program. (Doc. 14, brief in support of motion for class certification).

Plaintiff claims that upon entering the SMU program at USP-Lewisburg, inmates participate in an intake interview with USP-Lewisburg officials, often referred to as a "Quay" hearing. (Doc. 1, complaint at ¶¶ 42-49). The Quay hearing serves as an opportunity for Defendants to gather information about the inmate so that the prison officials can make safe and appropriate placement decisions, and avoid placing hostile inmates together. Id. at ¶ 43. At this interview, inmates disclose their separation needs and known enemies and identify specific geographic groups or gangs with whom an inmate has problems. Id. at ¶ 44.

Following the Quay hearing, a Cell Assignment Committee, with the assistance of corrections officers on each block, assigns each inmate to a cell block and a specific cell. Id. at ¶ 45. The Cell Assignment Committee is responsible for considering the inmate's safety when making placement decisions. Id. at ¶ 48.

Once settled at USP-Lewisburg, inmates frequently update Corrections Officers orally or in writing of new inmate adversaries, or geographic groups or gangs that they believe pose a substantial risk of material harm to them. Id. at ¶ 50.

Inmates are also subject to periodic cell-rotations, and such assignments sometimes include a new cellmate. Id. at ¶ 52. This rotation renews the potential for an inmate to be placed with a hostile inmate. Id. Instead of separating problematic inmates from each other, Plaintiff states that "Defendants have engaged, and continue to engage, in a pattern or practice of placing hostile inmates together, both in their cell assignments (where they spend twenty-three hours a day) as well as their recreational cage time (the remaining hour of the day)." Id. at ¶¶ 51-56. Plaintiff alleges that there have been "at least 272 reported incidents of inmate-on-inmate violence at Lewisburg from 2008 until July 2011." Id. To exacerbate the situation, inmates are unable to avoid inappropriate placements because the Defendants enforce their policy by placing those who refuse to be celled with a hostile inmate into painful and confining restraints. Id. at ¶¶ 59-67.

Plaintiff contends that Defendants' unconstitutional placement policy has resulted in inmates repeatedly experiencing three categories of injury: (1) injury or threat of injury as a result of being celled or placed with an inmate with whom an

inmate has a known hostile relationship; (2) injury or threat of injury because officers fail to timely stop foreseeable assaults between hostile inmates; and (3) placement in painful punitive restraints for refusing a dangerous cell assignment. Id. at ¶ 1. As such, Plaintiff seeks to have a class certified to challenge the constitutionality of the three interrelated policies or practices employed at USP-Lewisburg. Id. Plaintiff alleges: (1) that all inmates are subjected to the same placement policy, (2) that all inmates are subjected to the same intervention policy, and (3) that all inmates are subjected to the same punitive restraint practice if they resist the first two policies. Id.

## II. Certification Under Rule 23(a)

The class-action device is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Califano v. Yamasaki, 442 U.S. 682, 700–01 (1979). Class relief is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class." Id. at 701. It is appropriate in cases where it "saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be

litigated in an economical fashion under Rule 23." Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 155 (1982) (quoting Califano, 442 U.S. at 701).

Class certification is proper only if the trial court is satisfied that the prerequisites of Rule 23 are met. See, e.g., In re Hydrogen Peroxide Antitrust Litigation, 552 F.3d 305, 309 (3d Cir.2008) (citing Gen Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161(1982)). To meet the prerequisites of Rule 23, a plaintiff must establish both that the four requirements of Rule 23(a) have been met—numerosity, commonality, typicality, and adequacy—and that the pleading requirements of Rule 23(b)(1), (2), or (3) have been met. See generally Fed.R.Civ.P. 23. The plaintiff bears this burden by a preponderance of the evidence. See, e.g., Hydrogen Peroxide, 552 F.3d at 320. In analyzing whether the requirements of Rule 23 have been met, the Court makes the factual and legal inquiries necessary and considers all relevant evidence and arguments presented by the parties. Id. at 307.

A threshold requirement to a Rule 23 action is the actual existence of a class which is sufficiently definite and identifiable. See, e.g., Kline v. Sec. Guards, Inc., 196 F.R.D. 261, 266 (E.D. Pa.2000); Reilly v. Gould, Inc., 965 F.Supp. 588, 596 (M.D. Pa.1997); Clay v. Am. Tobacco Co., 188 F.R.D. 483 (S.D. Ill.1999). The initial inquiry on class definition is distinct from the analysis required by Federal

Rule of Civil Procedure 23. See, e.g., Sanneman v. Chrysler Corp., 191 F.R.D. 441, 446 n. 8 (E.D. Pa.2000).

The four prerequisites to a class action, under Federal Rule of Civil Procedure 23(a), are: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. As a shorthand, courts regularly refer to the prerequisites as numerosity, commonality, typicality, and adequacy of representation. See, e.g., In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 527 (3d Cir.2004); Georgine v. Amchem Prods., Inc., 83 F.3d 610, 624 (3d Cir .1996), aff'd sub nom. Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997). All four Rule 23(a) prerequisites for class certification serve as "guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Amchem, 521 U.S. at 626.

Plaintiff's proposed class consists of all persons who are currently or will be imprisoned in the Special Management Unit ("SMU") at USP-Lewisburg, pursuant

to the unconstitutional policy of placing hostile inmates in double cells or recreational cages without taking any reasonable measures to protect the inmates from inmate-on-inmate violence, and using punitive restraints to enforce this policy. This class definition is untenable because it is not objectively, reasonably ascertainable.

As noted above, "[c]lass certification presupposes the existence of an actual 'class'." White v. Williams, 208 F.R.D. 123, 129 (D.N.J. 2002) (quoting In re Sch. Asbestos Litig., 56 F.3d 515, 519 (3d Cir.1995)). A "proposed class must be sufficiently identifiable" and it must be "administratively feasible to determine whether a given individual is a member of the class." Id. (quoting Mueller v. CBS, Inc., 200 F.R.D. 227, 233 (W.D. Pa.2001)). See also Kline v. Sec. Guards, Inc., 196 F.R.D. 261, 266 (E.D. Pa.2000) (holding that plaintiffs must minimally define the class "in a way that enables the court to determine whether an individual is a class member"). This consideration necessitates that class membership be defined in an "objective manner." See, e.g., Kemblesville HHMO Center, LLC v. Landhope Realty Co., 2011 WL 3240779, 4 (E.D. Pa.2011) (quoting Rowe v. E.I. Dupont De Nemours & Co., 262 F.R.D. 451, 455 (D. N.J. 2009) (citing Bentley v. Honeywell Int'l Inc., 223 F.R.D. 471, 477 (S.D. Ohio 2004)).

Thus, certification is denied when determining membership in the class essentially requires a mini-hearing as to each prospective class member. Id. (citing Agostino v. Quest Diagnostics Inc., 256 F.R.D. 437, 478 (D. N.J. 2009) (citing Forman v. Data Transfer, Inc., 164 F.R.D. 400, 403 (E.D. Pa.1995)). See also, e.g., Mann v. TD Bank, N.A., 2010 WL 4226526, *1 (D. N.J. Oct.20, 2010) (concluding putative class ran afoul of requirement that it "be reasonably ascertainable" where court "would have to hear anecdotal evidence from each prospective class member" to determine membership under proposed definition); Kondratick v. Beneficial Consumer Disc. Co., 2006 WL 305399, *7 (E.D. Pa. Feb.8, 2006) (holding that "[t]o determine if an individual is a class member, a court must be able to do so by reference to the class definition"); Solo v. Bausch & Lomb Inc., 2009 WL 4287706, (D. S.C. Sept.25, 2009) (class not appropriate for certification where determining class membership would require "fact-intensive mini-trials").[4]

---

[4]See also Allen–Wright v. Allstate Ins. Co., 2008 WL 5336701 (E.D. Pa. Dec.17, 2008) (identifying problems with a class definition that required case-by-case factual determination); Forman v. Data Transfer, Inc., 164 F.R.D. 400, 403 (E.D. Pa.1995) (same).

The Court does proceed to resolve factual or legal disputes relevant to class certification, even when there is "[a]n overlap between a class certification requirement and the merits of a claim." Hydrogen Peroxide, 552

(continued...)


Moreover, courts have denied certification where the putative class "contains members lacking Article III standing," thus requiring any putative class to be "defined in such a way that anyone within it would have standing." Denney v. Deutsche Bank AG, 443 F.3d 253, 264 (2d Cir. 2006) (affirming the denial of a plaintiff class because the definition of the class was "so amorphous and diverse" that it was not "reasonably clear that the proposed class members have all suffered a constitutional or statutory violation warranting some relief") (citing Adashunas v. Negley, 626 F.2d 600, 604 (7th Cir. 1980)); Presbyterian Church of Sudan v. Talisman Energy, Inc., 244 F.Supp.2d 289, 334 (S.D. N.Y. 2003) (noting that "each member of the class must have standing with respect to injuries suffered as a result of defendants' actions").

Courts likewise have held that a class definition is overly broad where the class encompassed persons who had not suffered any injury. See also Owen v.

---

[4](...continued)
F.3d at 316, 318 (cited in In re Schering Plough Corp. ERISA Litigation, 589 F.3d 585, 600 (3d Cir.2009)). Under this class definition, however, the contemplated threshold determinations involve numerous potentially disparate merits-based inquiries, and—as noted above—the duty of the Court to make threshold legal and factual determinations to decide class certification does not extend so far.

Regence Bluecross Blueshield, 388 F.Supp. 2d 1318, 1334 (D. Utah 2005) ("[T]he proposed definition of the class is overbroad because many of the proposed class members have suffered no damages."); Zapka v. Coca-Cola Co., 2000 WL 1644539, at *3 (N.D. Ill. Oct.27, 2000) (holding class definition improper where it included individuals who were not harmed); Canady v. Allstate Ins. Co., 1997 WL 33384270 (W.D. Mo. June 19, 1997) ("Because the court cannot accept plaintiffs' blanket contention that every member of the proposed broad class has allegedly suffered harm as a result of the defendants' wrongdoing, the court must find that the class definition is overbroad.").

Even where all class members have been injured, a class definition may be overly broad if the question of liability is specific to each class member. For example, in Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124 (3d Cir. 2000), the Court of Appeals affirmed the district court's finding that the class definition was overly broad because the determination of actual liability with respect to any class member would require an individualized inquiry into the equities of each claim. Id. at 137-38.

Here, the Court notes, initially, that Plaintiff's request to certify a class consisting of all persons who are currently or will be imprisoned in the SMU at

USP-Lewisburg, is overbroad, as it clearly encompasses persons who have not suffered any injury. While Plaintiff alleges, and Defendants do not dispute, that there are approximately 1,384 inmates at USP-Lewisburg, and 1,000 to 1,100 in the SMU program, Plaintiff concludes, without any substantiating documentation, that "more than 1000 persons in the SMU are likely currently in double cells or recreation cages, any number of which may be placed with known hostile inmates, or subject to the threat of such placement, without any reasonable precautions in place to protect the inmates from inmate-on-inmate violence." (Doc. 14, Brief in Support). Plaintiff's numbers or estimates, however, do not distinguish between inmates with hostile cellmates, and inmates without hostile cellmates. As such, the proposed definition is amorphous and vague. Plaintiff, however, fares no better in breaking the class down into three subclasses, according to the specific harm alleged.

To the extent that Plaintiff seeks to certify a class based on inmates housed pursuant to a policy of housing inmates with a "hostile" inmate, the determination of class membership under this definition would require this Court to adjudicate, on a person-by-person basis, whether each proposed class member was placed with an inmate that prison officials knew, or should have known, posed a threat to that

inmate.[5] That is, class membership would not be ascertainable without the imposition of "serious administrative burdens incongruous with the efficiencies expected in a class action." Sanneman v. Chrysler Corp., 191 F.R.D. 441, 446 (E.D. Pa. 2000) (concluding certification inappropriate where determining class membership would create such burdens). Plaintiff attempts to define the class by stating that "from 2008 until July 2011, there have been 272 reported incidents of inmate on inmate violence". (See Doc. 1, complaint at ¶ 53). However, this statement, in addition to being unsubstantiated, fails to identify if these incidents were solely confined to the SMU, or, elsewhere within USP-Lewisburg. Furthermore, Plaintiff seeks to certify the class as "all persons who are **currently or will be imprisoned** in the SMU at USP-Lewisburg, with the class period

---

[5]The underlying Constitutional analysis for membership in the class is pursuant to the Eighth Amendment prohibition of cruel and unusual punishment. To succeed on such an Eighth Amendment claim, a prisoner must show that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"; (3) the defendant actually drew this inference; and (4) the defendant deliberately disregarded the apparent risk. Farmer v. Brennan, 511 U.S. 825, 828 (1994) (quoting Wilson v Seiter, 501 U.S. 294, 297, 302-03(1991); Hudson v. McMillian, 503 U.S. 1, 5 (1992)).

commencing from the filing of the above captioned action". (emphasis added) Thus, the 272 incidents Plaintiff references are outside the time period for the proposed class.

Certifying a class pursuant to Plaintiff's second harm, requires a determination, that pursuant to prison policy, a class member is not only housed with a hostile inmate, but is assaulted by the hostile inmate, and prison officials fail to intervene.[6] Once again, this is a very fact specific determination for class

---

[6] In Smith v. Mensinger, 293 F.3d 641 (3d Cir. 2002), the United States Court of Appeals for the Third Circuit held that corrections officers—like police officers—may be liable under § 1983 for failing to intervene in an instance of excessive force if they had a reasonable opportunity to do so. Moreover, the court held that "neither rank nor supervisory status is a factor in assessing whether [a corrections officer] had 'a realistic opportunity to intervene.' " Id. at 652 (quoting Miller v. Smith, 220 F.3d 491, 495 (7th Cir.2000)). Accordingly, following Smith, the Eighth Amendment is implicated only in a narrow class of failure-to-intervene claims. To state a valid cause of action "in a case where an inmate claims an officer had a duty to take reasonable steps to protect a victim from another officer's use of excessive force, the inmate must prove that (1) the officer had a duty to intervene; (2) the officer had the opportunity to intervene; and (3) the officer failed to intervene. Smith v. Mensinger, 293 F.3d 641, 650–51 (3d Cir. 2002)." Knauss v. Shannon, 1:CV–08–1698, 2010 WL 569829 (M.D. Pa. Feb.12, 2010). "Additionally, it is plaintiff's burden to adduce evidence of [these] requirements. Gainor v. Douglas County, Ga., 59 F.Supp. 2d 1259, 1289 (N.D. Ga. 1998) ('plaintiff must proffer evidence that the officer in question had a reasonable opportunity to intervene.')." Yarnall v. Mendez, 509 F.Supp. 2d

(continued...)

membership. Although, in the instant action, Plaintiff alleges that he was subjected to this very policy, and references the civil action of another inmate[7], who claims to have been subjected to the same policy of housing an inmate with a hostile inmate, with a resulting assault and failure of corrections officials to intervene, the record fails to adequately evidence that a significant number of putative class members would be in the same situation as the proposed representative, and meet Plaintiff's proposed class definition.

Finally, Plaintiff seeks to certify a class based on inmates who, pursuant to a prison practice, are placed in painful punitive restraints for refusing a dangerous cell assignment. Initially, the Court notes that Shelton does not pursue an Eighth

---

[6](...continued)
421, 433 (D. Del. 2007). Furthermore, with respect to the first essential element of this particular constitutional tort—the defendant's legal duty to intervene—courts construe this requirement narrowly and have held that if the defendant "had no special relationship with plaintiff at that time, he had no duty to intervene to protect the constitutional rights of plaintiff." Fields v. Blake, 349 F.Supp. 2d 910, 921 (E.D. Pa. 2004).

[7]Plaintiff references inmate Ronnie G. Wiggins, see Wiggins v. Bledsoe, 3:11-CV-1298 (M.D. Pa. July 12, 2011), who has filed a separate complaint, and claims to have also suffered extensive injuries as a result of Defendants' policy.

Amendment claim for unconstitutionally applied restraints. Because Plaintiff was never placed in restraints, he fails to share a common issue with any other inmate. Regardless of this fact, Plaintiff again seeks to certify a class that would require a very fact specific inquiry as to its membership. Once again, class membership would depend on a determination as to if a class member is presented with a hostile inmate, and refuses, and if the class member was then improperly placed in some type of restraint as a result of his refusal, and was injured by the use of the restraints. "If the court is required to conduct individual inquiries to determine whether each potential class member falls within the class, the court should deny certification." Ramirez v. Palisades Collection, LLC, 250 F.R.D. 366, 369 (N.D. Ill. 2008).

Because it would be impossible to definitively identify class members prior to individualized fact-finding and litigation, the Court need not consider whether the class meets the requirements of Rule 23(a) and 23(b). Shelton's motion for class certification will be denied.

A separate Order will be issued.

Dated: October 24, 2012

**United States District Judge**

-17-