UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

NORMAN N. SHELTON,                          :
                                            :
            Plaintiff                       :   No.  3:CV-11-1618
                                            :
      vs.                                    :   (Judge Nealon)
                                            :
                                            :          **FILED**
                                            :        **SCRANTON**
BRIAN A. BLEDSOE, et al.,                    :
                                            :          OCT 2 4 2012
            Defendants                       :
                                                PER _____
                                                    DEPUTY CLERK

**MEMORANDUM**

## Background

On August 30, 2011, Norman N. Shelton, an inmate confined in the United

States Penitentiary, Lewisburg ("USP-Lewisburg"), Pennsylvania, filed the above

captioned, combined, Bivens,[1] and Federal Tort Claims Act ("FTCA") claim,

pursuant to 28 U.S.C. § 2671, et seq.  Named as Defendants are the United States;

the following twenty-one current or former employees of the Bureau of Prisons

("BOP"): T. Kane, J. L. Norwood, B.A. Bledsoe, C. Maiorana, D. Young, K. Bahre

---

2. Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S.
388, 397 (1971).

(identified in the Complaint as "Krista Rear"), J. Dunkelberger, J. Adami, J. Fosnot, F. Perrin, S. Heath, N. Dreese, K. Whittaker, R. Raup, S. Zeiders (identified in the Complaint as "Zelder"), B. Walls, L. Potter, G. Kulago, R. Fisher, H. Moffat (identified in the Complaint as "Moffit"), D. Coombe (identified in the Complaint as "Combe"); and unidentified John Doe correctional officers.  Shelton raises claims of deliberate indifference to his safety with regard to events surrounding a November 26, 2009[2] assault upon him by his cellmate, and claims regarding his resulting medical care. (Doc. 1, complaint).  Shelton also sues the United States under the FTCA. Id.

Presently before the Court is Defendants' motion to dismiss and for summary judgment (Doc. 22).  For the reasons set forth below, the Court will grant Defendants' motion for summary judgment.

## I.   Summary Judgment

### A.  Bivens Standard

---

[2]On February 21, 2012, the Plaintiff filed a stipulation to dismiss Counts One and Two of the complaint, regarding claims arising out of an August 30, 2012 assault. (See Doc. 24, Stipulation).

Plaintiff's claims are filed pursuant to 28 U.S.C. § 1331, in accordance with Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, (1971).  Under Bivens, the District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor.  Bivens, supra. Pursuant to Bivens, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978).  A Bivens-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983 and the same legal principles have been held to apply.  See, Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir. 1975); Veteto v. Miller, 829 F.Supp. 1486, 1492 (M.D. Pa. 1992); Young v. Keohane, 809 F.Supp. 1185, 1200 n. 16 (M.D. Pa. 1992). In order to state an actionable Bivens claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. See West v. Atkins, 487 U.S. 42, 48 (1988); Young v. Keohane, 809 F.Supp. 1185, 1199 (M.D. Pa. 1992); Sharpe v. Costello, 2007 WL 1098964, *3 (M.D. Pa. 2007).

3

## B. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

4

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988).  In order to avoid summary judgment, however, parties may not rely on unsubstantiated allegations.  Parties seeking to establish that a fact is or is not genuinely disputed must support such an assertion by "citing to particular parts of materials in the record," by showing that an adverse party's factual assertion lacks support from cited materials, or demonstrating that a factual assertion is unsupportable by admissible evidence.  Fed.R.Civ.P. 56(c)(1); see Celotex, 477 U.S. at 324 (requiring evidentiary support for factual assertions made in response to summary judgment).  The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  Parties must produce evidence to show the existence of every element essential to its case that they bear the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U .S. at 323; see Harter v. G.A.F. Corp.,

5

967 F.2d 846, 851 (3d Cir.1992). Failure to properly support or contest an assertion of fact may result in the fact being considered undisputed for the purpose of the motion, although a court may also give parties an opportunity to properly provide support or opposition. Fed.R.Civ.P. 56(e).

## II.   Statement of Facts

From the pleadings, declarations and exhibits submitted therewith, the following facts can be ascertained as undisputed.

Prior to an inmate's arrival at USP Lewisburg, the Case Management Coordinator is provided a Security and Designation Data packet which includes a list of other inmates he is separated from. (Doc. 30-3, Ex. 2, Declaration of John Dunkelberger, USP-Lewisburg Case Management Coordinator, at ¶ 3). The Plaintiff's Security and Designation Data packet was provided on or about July 1, 2009, and was reviewed by Case Management Coordinator Dunkelberger. Id. It was noted on the first page of Plaintiff's Security and Designation Data packet, after reviewing the packet, that there were no Central Inmate Monitoring System (CIMS)[3] concerns. (Doc. 28, Att B, Security/Designation Data). Although

---

[3]The BOP monitors and controls the transfer, temporary release and
(continued...)

6

Plaintiff had several prior separations listed, none of them were from Inmate Carr.

Id.

---

[3](...continued)
community activities of certain inmates who present special needs for
management. (Doc. 30-3, Ex. 2, Declaration of John Dunkelberger, USP-
Lewisburg Case Management Coordinator, at ¶ 2).  Such inmates are known as
Central Inmate Monitoring Cases (CIM) and require a higher level of review
for transfers, temporary releases or community activities.  Id.  This monitoring
is done to provide protection to all concerned and to contribute to the safe and
orderly operation of the federal institutions.  Id.  CIM categories include
"Separation," which includes inmates who may not be confined in the same
institution (unless the institution has the ability to prevent any physical contact
between the separatees).  Id.  Factors to be considered in categorizing an
inmate as a Separation include, but are not limited to: testimony by or about an
individual provided in court, whether the inmate has exhibited aggressive or
intimidating behavior towards other specific individuals in the community or
institution, and whether inmates have cooperated with the authorities in
providing information about illegal activities of other individuals.  Id.  An
inmate may be classified as a CIM inmate at any time by a community
corrections manager or by appropriate staff in the BOP Central Office,
regional offices or institutions.  Id. Periodic reviews of CIM assignments occur
at program review.  Id.  When staff believe that removal or modification of a
CIM assignment is appropriate, the institution's Case Management Coordinator
(CMC) and appropriate reviewing authority must be notified.  Id.  An inmate
may appeal the placement in a CIM category by utilizing the administrative
remedy process.  Id.  BOP policies and procedures regarding CIM assignments
are set forth in BOP Program Statement 5180.05, Central Inmate Monitoring
System (Doc. 30-3, Dunkelberger Decl., Ex. 2, Att. A).

On November 26, 2009, at approximately 7:13 am, the G-3#2 Officer activated his body alarm upon observing Inmate Carr assault inmate Norman Shelton, in G-Block cell #211. Specifically, while inmate Shelton was handing out food trays from the breakfast meal, inmate Carr assaulted him by striking him with closed fists to the head and torso. (Doc. 30-1, Ex. 1, Att. B, Form 583 Report of Incident). Upon the arrival of responding staff, both inmates submitted to hand restraints and were escorted from the cell without further incident. Id. Both inmates were medically assessed. Id. Inmate Shelton was found to have sustained tenderness to his left ribs and left hand. Id. Inmate Carr was found to have sustained no injuries. Id. No staff injuries were reported. Id.

In a November 26, 2009 Memorandum, Defendant Fisher stated that on the morning of November 26, 2009, he was on the second floor of G block assisting with the collection of food trays, when staff attempting to collect the food trays from Cell 211 activated their body alarm due to a cell fight. Id. Defendant Fisher stated that he went to the front of the range and disengaged the dead bolt lock for that side of the range. Id. He then went to the cell, and staff restrained and removed both Shelton and Carr without further incident. Id.

The daily assignment roster reflects Officer Moffat was off on November

8

26, 2009; and Officer Coombe, who was assigned to Tower No. 7, was not even inside the institution where the incident occurred. (Doc. 28, Att. ff, Daily Assignment Roster).

At 7:25 a.m., PA-C Hemphill conducted an injury assessment of Inmate Shelton. (Doc. 30-1, Ex. 1, Att. B, Bureau of Prisons Health Services Clinical Encounter - Administrative Note). Shelton was found to have muscle tenderness and pain in the joint of his hand. Id. There were no significant findings reported. Id. However, as a precaution, Plaintiff was scheduled for a December 4, 2009, x-ray of his hand and ribs. Id.

On August 30, 2011, through counsel, Plaintiff filed the instant action. (Doc. 1, complaint). Shelton alleges that Defendants place "hostile" inmates together in cells and/or recreation cages when there is a serious risk that the "hostile" inmates will harm each other; use restraints to punish inmates who complain about such placements; and fail to intervene to prevent harm to inmates from such cell placements. Id. He claims that he has personally been assaulted "several times" by cellmates with whom he had a "documented hostile relationship," suffered injury because staff failed to "react timely" to stop the assaults, and placed in restraints as punishment for refusing to accept "hostile inmates" as his

9

cellmates. Id.

Shelton alleges that conditions within the SMU, including housing inmates in cells together or placing them in recreation cages together, lead "to an obvious and pervasive threat of violence." Id. at ¶ 40. He claims that "once settled," inmates would frequently inform staff about their "enemies" or "groups" or "gangs" which they believe pose a risk to their safety. See id. at ¶ 50.

Shelton alleges that Defendants knew that if they placed "hostile" inmates in a cell or recreation cage together, there was a substantial risk that the inmates would engage in violent conduct that could lead to injury or death. See id. at ¶ 51. He claims that Defendants Bledsoe, Young, and Bahre, knew of or were deliberately indifferent to the policy of USP Lewisburg staff in placing known hostile inmates together in cells or recreational cages, and that USP-Lewisburg has a policy of not entering cells or recreation cages to stop inmate-on-inmate assaults until the assault has stopped. See id. at ¶¶ 52-57. Specifically, he contends that Defendant Heath acknowledged Shelton's "separation needs" in a 2009 intake interview when he returned to USP-Lewisburg as resident of the SMU, and that during this interview he stated that gang members, including the "Bloods" and the "Crips" were hostile to Muslim inmates. See id. at ¶¶ 80, 84. However, despite being put on notice, on

November 25, 2009, the Committee assigned him to a cell with inmate Carr, a known "Crips" gang member. See id. at ¶¶ 100-101, 107. Shelton believes that because of the August 30, 2009 fight, and his alleged request not to be celled with a gang member, this cell assignment was improper. Id. at ¶ 102. Plaintiff claims that Defendants Raup, Zeiders, and John Doe defendants "forced" Inmate Carr into Shelton's cell despite Shelton's protests and inmate Carr's comments that he would assault Shelton. See id. ¶¶ 103-109. Shelton alleges that Defendant Raup deliberately misled Shelton by insisting that Inmate Carr was not a gang member. Id. at ¶ 107.

## III.   Discussion

### A.   Eighth Amendment Failure to Protect Claim

The Eighth Amendment's prohibition against the infliction of cruel and unusual punishment has been interpreted to impose upon prison officials a duty to take reasonable measures "'to protect prisoners from violence at the hands of other prisoners.'" Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)). Although, "[i]t is not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for a victim's safety," "[b]eing violently

11

assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Farmer, 511 U.S. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 345 (1981)). A plaintiff, however, must prove more than that he had a fight with another inmate, see Beard v. Lockhart, 716 F.2d 544, 545 (8th Cir. 1983), and mere negligent conduct that leads to serious injury of a prisoner by a prisoner does not expose a prison official to liability under § 1983. Davidson v. Cannon, 474 U.S. 344, 347-48 (1986). To succeed, a prisoner must show that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"; (3) the defendant actually drew this inference; and (4) the defendant deliberately disregarded the apparent risk. Farmer, 511 U.S. at 834-37.

In determining whether a defendant was deliberately indifferent, the court must "focus [on] what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be)." Hamilton v. Leavy, 117 F.3d at 747. It is not an objective test for deliberate indifference; rather, the court must look to what the prison official actually knew, rather than what a reasonable official in his position should have known. "A prison official's knowledge of a substantial risk is a

12

question of fact and can, of course, be proved by circumstantial evidence." Id. In

other words, it may be concluded that a prison official knew of a substantial risk

from the very fact that the risk was obvious.  The Farmer Court explained in

hypothetical terms the type of circumstantial evidence sufficient for a finding of

actual knowledge on the part of a prison official:

> [I]f an Eighth Amendment plaintiff presents evidence
> showing that a substantial risk of inmate attacks was
> 'longstanding, pervasive, well-documented, or expressly
> noted by prison officials in the past,' and the
> circumstances suggest that the defendant-official being
> sued had been exposed to information concerning the risk
> and thus 'must have known' about it, then such evidence
> could be sufficient to permit a trier of fact to find that the
> defendant-official had actual knowledge of the risk.

Farmer, 511 U.S. at 842-43.

Thus, in order to survive Defendants' summary judgment motion, Shelton was

obligated to produce sufficient evidence to support the inference that Defendants

"'knowingly and unreasonably disregarded an objectively intolerable risk of harm.'"

Beers-Capitol v. Whetzel, 256 F.3d 120, 132 (3d Cir. 2001).  It is not enough to

assert that a defendant should have recognized the risk; the evidence must be

sufficient to support the inference that "the defendant must have recognized the

excessive risk and ignored it." Id. at 138.

13

There is no evidence in the record that the Defendants ever obtained any knowledge or awareness from Shelton that Carr posed any substantial risk to his safety. Plaintiff's only allegation is that Defendants "forced" inmate Carr into Plaintiff's cell, "despite Shelton's protests." (Doc. 1, Complaint). However, Shelton's allegation, without more, is insufficient to give Defendants notice that Shelton faced a substantial risk of harm. Shelton does not allege that inmate Carr threatened him in any way before they were celled together or that they had any history of ill will between them. He simply alleges that inmate Carr was a known "Crips" gang member, and he told staff that gang members, including the "Bloods" and the "Crips" were hostile to Muslim inmates.

Thus, the record lacks sufficient evidence to establish that Defendants knew or were aware of and disregarded a substantial risk to Shelton's health or safety. There is no evidence in the record which would create a material issue of fact with regard to whether Defendants had the requisite level of knowledge or awareness necessary to impose liability under the Eighth Amendment. Nor is there evidence from which it could be inferred that inmate Carr posed a risk of harm to Shelton. At most, Shelton alleges that inmate Carr made vague allegations that he would assault Shelton to Defendant Raup, which may state a claim of negligence -a claim not

14

viable here.  Thus, Shelton failed to state claim of an Eighth Amendment violation.

See Davis v. Muscarella, 615 F. Supp. 2d 296, 303 (D. Del. 2009) (noting the

plaintiff's Eighth Amendment claim failed, and at most, the plaintiff asserted a

negligence action).  Accordingly, summary judgment is warranted in favor of

Defendants.

Likewise, Plaintiff's claim that staff stood outside Shelton's

cell while Shelton was assaulted by Inmate Carr, and did not do anything to

stop the attack, fails to sufficiently state an Eighth Amendment violation.

> When the ever-present potential for violent confrontation and
> conflagration ripens into actual unrest and conflict, the admonition that
> a prison's internal security is peculiarly a matter normally left to the
> discretion of prison administrators carries special weight.  Prison
> administrators should be accorded wide-ranging deference in the
> adoption and execution of policies and practices that in their judgment
> are needed to preserve internal order and discipline and to maintain
> institutional security.  That deference extends to a prison security
> measure taken in response to an actual confrontation with riotous
> inmates, just as it does to prophylactic or preventive measures intended
> to reduce the incidence of these or any other breaches of prison
> discipline.  It does not insulate from review actions taken in bad faith .
> and for no legitimate purpose, but it requires that neither judge nor jury
> freely substitute their judgment for that of officials who have made a
> considered choice.  Accordingly, ..., courts must determine whether the
> evidence goes beyond a mere dispute over the reasonableness of a
> particular use of force or the existence of arguably superior alternatives.
> Unless it appears that the evidence, viewed in the light most favorable
> to the plaintiff, will support a reliable inference of wantonness in the

infliction of pain under the standard we have described, the case should not go to the jury.

Whitley v. Albers, 475 U.S. 312, 321-322 (1986) (internal quotations and citations omitted). The restriction on cruel and unusual punishment contained in the Eighth Amendment, however, reaches non-intervention just as readily as it reaches the more demonstrable brutality of those who unjustifiably and excessively employ fists, boots or clubs. Smith v. Mensinger, 293 F.3d 641, 651 (3d Cir. 2002). A corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation if the corrections officer had a reasonable opportunity to intervene and failed to do so. Id. at 650; see also, Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 456 (3d Cir. 1996) (noting that deliberate indifference standard should apply to claims that prison officials failed to protect inmate from violent attack whether or not the attack comes from another inmate).

The record evidence reveals that Defendant, Officer Rear was standing at the cell when Carr attacked Shelton. Once Officer Rear's body alarm was activated, Officer Fisher immediately went to the front of the range and disengaged the dead bolt lock for that side of the range and then went to the cell, assisting Officer Rear in

16

restraining and removing both Shelton and Carr, without further incident. As evidenced by the record, the incident occurred at 7:13 am and by 7:25 am, Shelton was already being medically assessed in the medical department. Thus, it appears that the incident, removal and transfer to medical, occurred within a matter of twelve minutes. As such, the record fails to support an Eighth Amendment claim of deliberate indifference to Shelton's safety. This is precisely the type of prison security matter where courts have recognized that they must defer to the experience and judgment of prison officials. See Whitley v. Albers, 475 U.S. at 320 (1986); Hudson v. McMillian, 503 U.S. 1, 6 (1992) (recognizing that "officials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. . . . and must determine what action to take 'in haste, under pressure, and frequently without the luxury of a second chance.'") (quoting Whitley v. Albers, 475 U.S. at 320)). It appears that Plaintiff's allegations are simply a disagreement as to the timing of Defendants' response, as he makes no allegation that the Defendants acted wantonly to see Shelton in pain. Shelton v. Bledsoe, slip op., Civ. No. 4:11-cv-0368, at 14 (quoting Whitley v. Albers, 475 U.S. at 321-22 (citations omitted)).

17

**B.      Eighth Amendment Failure to Provide Adequate Medical Care**

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id. (quotation and citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a

medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment..." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990).  Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

Further, a prison administrator cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. Id., 991 F.2d at 69.  If, however, non-medical prison personnel had "a reason to believe (or actual

knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. <u>Spruill</u>, 372 F.3d 236.

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. <u>Farmer v. Carlson</u>, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). <u>See</u> <u>McCracken v. Jones</u>, 562 F.2d 22, 24 (10th Cir. 1977); <u>Smart v. Villar</u>, 547 F.2d 112, 113 (10th Cir. 1976), <u>cert</u>. <u>denied</u>, 450 U.S. 1041 (1981).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. <u>Little v. Lycoming County</u>, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. <u>Farmer v. Carlson</u>, 685 F. Supp. at 1339.

The only allegation made by Plaintiff regarding medical care is that staff failed to "take him for medical treatment." (Doc. 1, Complaint). Plaintiff provides no further evidence in support of his claim.

20

However, the documentation submitted by Defendants clearly demonstrates that Plaintiff received medical attention, as well as treatment for his injuries, and that the attention Plaintiff received lacks the requisite deliberate indifference to support a Section 1983 claim. Immediately after the assault, Plaintiff was placed in the Special Housing Unit, where, PA Hemphill conducted an injury assessment. (Doc. 30-1, Ex. 1, Att. B, Bureau of Prisons Health Services Clinical Encounter - Administrative Note). Shelton was found to have muscle tenderness and pain in the joint of his hand. Id. There were no significant findings reported. Id. However, Plaintiff was scheduled for a December 4, 2009, x-ray of his hand and ribs. Id.

The record evidence establishes meaningful efforts by the Defendants to provide Plaintiff with necessary medical care, and an attendant mental state that falls woefully short of deliberate indifference. Thus, Defendants' uncontroverted evidence demonstrates that the  scope and quality of medical attention provided precludes a finding of deliberate indifference on behalf of the Defendants. As such, Defendants are entitled to summary judgment.

### C.    Federal Tort Claims Act

The Federal Tort Claims Act ("FTCA"), 28 U.S.C.A. § 2671 et seq., is a statutory waiver of sovereign immunity for tort claims. Gotha v. United States, 115

F.3d 176, 179 (3d Cir. 1997).  The FTCA allows the government to be sued "in the

same manner and to the same extent as a private individual under like

circumstances." 28 U.S.C.A. § 2674.  However, as the FTCA is an express waiver of

sovereign immunity, strict compliance with its provisions is required.  Livera v. First

Nat'l Bank, 879 F.2d 1186, 1194 (3d Cir. 1989).

 As a prerequisite to suit under the FTCA, a claim must first be presented to

the federal agency and be denied by the agency. The FTCA provides:

> An action shall not be instituted against the United States for money
> damages for injury or loss of property or personal injury ⋯ unless the
> claimant shall have first presented the claim to the appropriate Federal
> agency and his claim shall have been finally denied by the agency in
> writing and sent by certified or registered mail.

28 U.S.C. § 2675(a).  "The statutory language is clear that a court does not have

jurisdiction before administrative remedies have been exhausted, and a court must

dismiss any action that is initiated prematurely." Wilder v. Luzinski, 123 F. Supp.2d

312, 313 (E.D. Pa. 2000) (citing McNeil v. United States, 508 U.S. 106, (1993);

Wujick v. Dale & Dale, 43 F.3d 790, 793-94 (3d Cir. 1994)).

Moreover, a claimant must abide by the strict time requisites codified in 28 U.S.C. § 2401(b) or its tort claim under the FTCA will be "forever barred."[4]  <u>See</u> <u>Bialowas v. United States</u>, 443 F.2d 1047, 1049 (3d Cir. 1971).  In order to sue the United States in District Court and avoid violating the FTCA's express statute of limitations, a tort claim must be "presented in writing to the appropriate Federal agency within two years after such claim accrues...." 28 U.S.C. § 2401(b); <u>see</u> <u>also</u> <u>Bialowas</u>, 443 F.2d at 1049.  Section 2401's "time bar is strictly construed."  <u>Brown</u> <u>v. Camden County Counsel</u>, No.10–1098, 2010 U.S. App. LEXIS 9826, *6 (3d Cir. May 13, 2010) (citing <u>Livera v. First Nat. State Bank of N.J.</u>, 879 F.2d 1186, 1195 (3d Cir. 1989)).

A review of USP-Lewisburg administrative tort claim records from January, 2009, through the present, reveals that Shelton filed seven administrative

---

[4]28 U.S.C. § 2401(b) states:
[A] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal Agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

tort claims regarding incidents occurring on January 15, 2009, January 24, 2009, January 25, 2009, two incidents on August 30, 2009, February 10, 2011 and July 15, 2011. (Doc. 30-1, Ex. 1, Att. A, Summaries, BOP administrative tort claim database).  As is apparent from these undisputed facts, Shelton never filed an administrative tort claim regarding the November 26, 2009 incident. Id.  Plaintiff does not dispute this.  Consequently, the Court does not have jurisdiction to hear Shelton's tort claim, and the Defendants are entitled to summary judgment.

A separate Order will be issued.

Dated: October 24, 2012

**United States District Judge**

24