**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NORMAN SHELTON,** | : | **Civil No. 3:11-CV-1618** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Judge Nealon)** |
| | : | |
| **BRYAN BLEDSOE, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.   Introduction

In the instant case we most assuredly do not write upon a blank slate.  Quite the contrary, much of the past of this litigation now forms the prolog for our consideration of the matters currently before the Court.

Presently, we are asked to consider a renewed motion for summary judgment lodged by the defendants, (Docs. 22 and 83.) along with a motion to stay discovery pending the resolution of this summary judgment motion.  (Doc. 79.)  The defendants renew their summary judgment motion, and couple that motion with a motion to stay discovery, against the backdrop of a procedural posture which in our view strongly suggests what the outcome of these motions should be.

That procedural history reveals that the defendants previously sought summary judgment prior to allowing the plaintiff discovery.  That motion was granted by the district court, but the entry of summary judgment was reversed and vacated by the United States Court of Appeals for the Third Circuit in an opinion which emphasized the importance of permitting some limited discovery prior to entry of summary judgment in a case where the plaintiff had made a substantial assertion that discovery was needed to respond to the motion.  See Shelton v. Bledsoe, 775 F.3d 554 (3d Cir. 2015).

Having once been rebuffed in this fashion by the appellate court, the defendants have now renewed their summary judgment motion, while seeking to stave off discovery by the plaintiff.  Predictably, the plaintiff has renewed the claims which prevailed the last time that the parties litigated a summary judgment motion, arguing that he must obtain some limited discovery in order to contest this motion.

Recognizing that doing the same thing over and over again and expecting different results[1] is deemed to be folly, we believe in light of the prior appellate court ruling that entry of summary judgment on this record, where the plaintiff persists in seeking discovery that he regards as essential to contest the motion, would be premature.  Accordingly, with one exception as set forth below, it is recommended that

---

[1] Albert Einstein

2

this motion be denied, without prejudice to renewal following a period of focused discovery.[2]

## II.    Statement of Facts and of The Case

The factual background of this case was aptly summarized by the Court of Appeals in its decision vacating the first order granting defendants' motion for summary judgment.  At that time, the appellate court explained that:

> The Special Management Unit, or "SMU," is a housing unit within the United States Penitentiary at Lewisburg, Pennsylvania ("USP–Lewisburg").  The SMU houses inmates who have been identified as having violent tendencies or who have a history of gang involvement during their incarceration.  Inmates assigned to the SMU are confined to their cells for 23 hours a day, but they can spend the remaining hour in a recreation cage if they choose.  SMU officials (including several of the defendants) are responsible for assigning cellmates in a manner that ensures the safety and security of the prison.  When first assigned to the SMU, inmates are interviewed by prison officials. Information obtained during the interview is used to ensure that inmates who may be hostile to each other are not housed in the same cell.
>
> Shelton, an inmate at USP–Lewisburg, brought this action on behalf of himself and other inmates housed in the SMU.  He alleges that the defendants have engaged in a pattern, practice, or policy of improperly placing inmates who are known to be hostile to each other in the same cell.  He also claims that the defendants fail to intervene when the predictable inmate-on-inmate violence erupts, and that defendants improperly restrain inmates who refuse cell assignments with inmates who are known to be hostile to them.  The complaint seeks damages for Shelton personally, but it seeks only injunctive and declaratory relief on behalf of the class.  Appendix ("A A.") 88–89.

---

[2]While we are recommending this course, we will briefly stay discovery in this matter pending the district's resolution of this Report and Recommendation.

Shelton's individual claims under the Eighth Amendment and the FTCA were initially based on two separate incidents in 2009, one of which occurred in August, and the other in November.  However, Shelton voluntarily dismissed claims arising from the August incident.  We are, therefore, only concerned with the November incident, which occurred when Shelton was scheduled to be moved to another cell and housed with an inmate named Carr.  According to Shelton, Carr had previously told a prison official, defendant Raup, that he would attack Shelton if they were housed in the  same cell.

Raup purportedly threatened Shelton with punitive restraints when Shelton asked not to be housed with Carr.  Shelton alleges that he was nevertheless physically forced into the cell by defendants Raup, Zelder, and two John Doe corrections officers.  The next day, while Shelton was bending over to retrieve a food tray, Carr purportedly assaulted him.  Shelton alleges that defendants Fisher, Raup, Kulago, Zelder, Moffit and Combe were outside his cell during the attack but did not attempt to intervene.  The defendants claim that they responded in accordance with applicable policies that are designed to protect both inmates and guards.

Shelton's Eighth Amendment claims on behalf of the class are based on allegations that prison officials improperly placed inmates in cells with inmates known to be hostile to them.  He alleges that the committee that makes the cell assignments places hostile inmates in the same cell despite committee's knowledge of prior violence between the inmates and its knowledge of the obvious risk the cell assignments create.  According to Shelton, the injurious effects of this practice are exacerbated by a prison policy which prevents guards from promptly intervening when inmate-on-inmate violence erupts.  This policy purportedly requires corrections officers to stand outside a cell and use only verbal warnings until a lieutenant arrives when inmate violence erupts inside a cell.

Shelton v. Bledsoe, 775 F.3d 554, 557-58 (3d Cir. 2015).

Upon initial consideration of these claims, the district court denied Shelton's motion for class certification and granted the defendants' motion for summary judgment.  Shelton appealed, and on January 7, 2015, the court of appeals reversed these rulings, and remanded this matter to the district court for further consideration of these merits and class certification issues.  <u>Id</u>.

With respect to the ruling on the defendants' motion for summary judgment, the court of appeals focused upon procedural aspects of that ruling, observing that the summary judgment motion was granted without permitting the plaintiff any discovery, and in the face of an affidavit from counsel pursuant to Rule 56(d) of the Federal Rules of Civil procedure averring that some discovery was necessary before Shelton could respond to this dispositive motion.  Given this procedural posture the appellate court observed that:  " '[I]t is well established that a court "is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." ' <u>Doe v. Abington Friends Sch.</u>, 480 F.3d 252, 257 (3d Cir.2007) (quoting <u>Dowling v. City of Phila.</u>, 855 F.2d 136, 139 (3d Cir.1988)).  Rule 56(d) states that '[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:  (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.' Fed.R.Civ.P. 56(d)." <u>Shelton v. Bledsoe</u>, 775 F.3d

554, 565-66 (3d Cir. 2015).  According to the appellate court:  "[i]f discovery is incomplete, a district court is rarely justified in granting summary judgment, unless the discovery request pertains to facts that are not material to the moving party's entitlement to judgment as a matter of law."  Shelton v. Bledsoe, 775 F.3d 554, 568 (3d Cir. 2015).  Finding in this case that summary judgment had been granted without adequate consideration of the plaintiff's discovery requests, the court of appeals reversed this grant of summary judgment and remanded the case for further proceedings.[3]  On remand, this matter was referred to the undersigned for further pre-trial management.

Upon remand, the defendants have renewed their summary judgment motion, (Docs. 22, 83.), and have separately sought a protective order in this case, curtailing discovery. (Doc. 79.)  In these pleadings, the defendants have advanced a number of legal arguments, but appear to principally rely upon two related argument:  First, the defendants assert that Shelton has failed to show a pattern, practice or policy which violates the Eighth Amendment.  In addition, the defendants allege that they are

---

[3]The court of appeals also separately vacated the order denying class certification.  Id.

entitled to qualified immunity on any Eighth Amendment failure to protect or failure to intervene claims.  (Doc. 83.)[4]

The plaintiff has responded to the defendants' primary claims in the summary judgment motion in a familiar fashion, by asserting once again that he requires some initial discovery in order to fully address the defendants' claims that they are entitled to qualified immunity from damages, and that the elements of an Eighth Amendment claim have not been fully met here.  This assertion, in turn, is supported by a declaration detailing the discovery that plaintiff believes may be necessary to address the legal issues raised in this motion.  (Doc. 87, Decl. Stephen Brown, Esq.)  While it is unnecessary for us to determine whether and to what extent all of the proposed discovery sought by plaintiff's counsel may be obtained, suffice it to say that several categories of this  proposed discovery, which seeks information concerning Shelton's cell assignments, Shelton's prior expressions of concern to staff for his physical safety, the response of staff when Shelton was the victim of inmate violence, and the degree

---

[4]The defendants also asserted that personal jurisdiction was lacking over one defendant Director Samuels; that requests for injunctive relief by Shelton individually were moot; and that the complaint no longer stated any claims against two defendants, defendants Whitaker and Wells.  In his response to this motion, Shelton argues that personal jurisdiction over Defendant Samuels is proper, and that his injunctive relief claims are not entirely moot.  It does not appear that Shelton disputes defendants' argument that the complaint currently fails to allege any wrongdoing by defendants Whitaker and Wells.  In fact, plaintiff's counsel concede that dismissal of these defendants may be appropriate.

to which staff left Shelton confined in restraints in the presence of other potentially violent inmates, may be relevant to the issues in this lawsuit.  (Doc. 87, Decl. Stephen Brown, Esq., ¶¶7.A.6,8; 7.B.3; 7C. 3-4; 7.E.3; 7.F.4.)

It is against this procedural backdrop, and mindful of the court of appeals' admonition that  "[i]f discovery is incomplete, a district court is rarely justified in granting summary judgment, unless the discovery request pertains to facts that are not material to the moving party's entitlement to judgment as a matter of law," Shelton v. Bledsoe, 775 F.3d 554, 568 (3d Cir. 2015), that we now consider the defendants' summary judgment motion.

For the reasons set forth below, it is recommended that the motion be granted, in part, and denied in part without prejudice to renewal following specific, and focused discovery.

### III.   Discussion

### A.   Rule 56–The Legal Standard

The defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P., Rule 56 (a).  Through summary adjudication a court is empowered to dispose of those claims

that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and

for which a trial would be "an empty and unnecessary formality." Univac Dental Co.

v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa.

Mar. 31, 2010).

The substantive law identifies which facts are material, and "[o]nly disputes

over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is

a sufficient evidentiary basis that would allow a reasonable fact finder to return a

verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes

shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec.

& Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown

that there is an absence of evidence to support the nonmoving party's claims, "the non-

moving party must rebut the motion with facts in the record and cannot rest solely on

assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv.

Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v.

Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on

9

which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322.  Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence.  Anderson, 477 U.S. at 249.  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment."  Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995).  Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials."  Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007)(citation omitted).  Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial."  Fireman's Ins. Co. of Newark NJ v. DuFresne, 676 F.2d 965,

968 (3d Cir. 1982), <u>see</u> <u>Sunshine Books, Ltd. v. Temple Univ.</u>, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." <u>Lockhart v. Hoenstine</u>, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." <u>Gans v. Mundy</u>, 762 F.2d 338, 341 (3d Cir. 1985)(citing <u>Ness v. Marshall</u>, 660 F.2d 517, 519 (3d Cir. 1981)). In particular, a plaintiff cannot avoid summary judgment by simply relying upon a self-declaration that he has authored which relies not on evidence, but on the plaintiff's own interpretation of events and, essentially, opinion testimony. <u>See</u> <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990) (the nonmoving party may not defeat a properly supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with the conclusory allegations of an affidavit."); <u>Iseley v. Beard</u>, No. 02-2006, 2009 U.S. Dist. LEXIS 52014, *32 (M.D. Pa. Mar. 30, 2010) (conclusory allegations contradicted by documentary evidence cannot be accepted as true). Yet, while "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment," <u>Countryside Oil Co., Inc. v. Travelers Ins. Co.</u>, 928 F.Supp. 474, 482 (D.N.J.1995), and "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory

allegations or suspicions," <u>Gans v. Mundy</u>, 762 F.2d 338, 341 (3d Cir. 1985), the Court must "consider all evidence in the light most favorable to the party opposing the motion." <u>A.W. v. Jersey City Pub. Schs.</u>, 486 F.3d 791, 794 (3d Cir. 2007). Therefore, in a case where the parties' pleadings reveal disputes regarding the admissibility of specific evidence, the principles governing consideration of summary judgment motions –which enjoin us to examine the evidence in a light most favorable to the party opposing the motion–also call upon us to resolve all genuine disputes concerning the admissibility of specific items of evidence in favor of the party opposing the motion.

There is a necessary corollary to these principles defining when summary judgment may be appropriate. In the instant case, the plaintiff has filed an affidavit which asserts that he is hamstrung in responding to the defendants' summary judgment motion, which is based largely upon the defendants' description of the facts and circumstances of this case, because he has not had a full opportunity to engage in discovery in this case. On this score the plaintiff has invoked the protections of Rule 56(d) which provides as follows:

> **When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> **(1)** defer considering the motion or deny it;

**(2)** allow time to obtain affidavits or declarations or to take discovery; or

**(3)** issue any other appropriate order.

 Fed. R. Civ. P. 56(d).

Rule 56(d) permits a court to defer consideration of a summary judgment motion when some further discovery is needed by the party opposing the motion in order to frame a meaningful response to the motion. Under these circumstances, we are mindful of the fact that: "' "[I]t is well established that a court 'is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery " ' Doe v. Abington Friends Sch., 480 F.3d 252, 257 (3d Cir.2007) (quoting Dowling v. City of Phila., 855 F.2d 136, 139 (3d Cir.1988))." Shelton v. Bledsoe, 775 F.3d 554, 565 (3d Cir. 2015). Further,  "[i]f discovery is incomplete, a district court is rarely justified in granting summary judgment, unless the discovery request pertains to facts that are not material to the moving party's entitlement to judgment as a matter of law." Shelton v. Bledsoe, 775 F.3d 554, 568 (3d Cir. 2015). Therefore, as a general rule we should refrain from declaring the facts to be undisputed for summary judgment purposes when it is evident that one party seeks discovery in order to fully respond to a motion for summary judgment.

### B.   Defendants Whitaker and Wells Should Be Dismissed

Applying these legal guideposts, we find that Defendants Whitaker and Wells should be dismissed form this action. Presently, there are no allegations or claims in the Complaint against Defendant Wells, and the only allegations against Defendant Whitaker are regarding the August 30, 2009 incident, which Shelton dismissed voluntarily. Thus, these particular defendants, while named in the caption of the case, are no longer described in  the body of this pleading.. This cursory style of pleading is plainly inadequate to state a claim against the individual defendants and compels dismissal of these defendants. Hudson v. City of McKeesport, 244 F. App'x 519 (3d Cir. 2007)(affirming dismissal of defendant who was only named in caption of case); Walthour v. Child & Youth Servs., 728 F. Supp. 2d 628, 636 (E.D. Pa. 2010)(dismissing claims against defendants only identified in exhibits attached to complaint).

In fact, the plaintiff concedes as much, and has not opposed dismissal of these defendants from this lawsuit. Therefore, Defendants Whitaker and Wells should be dismissed as parties.

### C.   Summary Judgment on The Plaintiffs' Eighth Amendment Claims and the Defendants' Qualified Immunity Defense is Premature at This Time

However, as for the plaintiff' Eighth Amendment claims, and the qualified immunity defense asserted by the defendants, we find that summary judgment would

be premature, given the lack of any meaningful discovery on these claims and defenses. The necessity of permitting some discovery prior to the adjudication of a summary judgment motion is underscored in a case such as this where the gravamen of Shelton's lawsuit is a claim that prison officials unreasonably failed to protect him from harm at the hands of other inmates.

Courts have long recognized that prison officials have an affirmative obligation to protect inmates from abuse at the hands of fellow prisoners. However, as is the case generally with Eighth Amendment claims, proof of a culpable subjective intent is a critical component of an Eighth Amendment failure-to-protect claim. The leading case in the Third Circuit addressing deliberate indifference in this prison context is found in Beers-Capitol v. Whetzel, 256 F.3d 120 (3d Cir. 2001). In Beers-Capitol, the Third Circuit explained the basic requirements of a claim brought against a prison official under the Eighth Amendment as follows:

> An Eighth Amendment claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind."

Id. at 125 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  Furthermore, in cases involving prison safety or prison conditions, the relevant state of mind "is one of 'deliberate indifference' to inmate health or safety."  Id.

15

This deliberate indifference standard "is a subjective standard under Farmer – the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." Id. Thus, " '[d]eliberate indifference can be shown when a prison official *knows of and disregards* an excessive risk to inmate health or safety' Hamilton v. Leavy, 117 F.3d 742, 747 (3d Cir. 1997) (quotation marks omitted)(emphasis added). Accordingly, "to survive summary judgment on an Eighth Amendment claim asserted under 42 U.S.C. § 1983, a plaintiff is required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Davis v. Williams, 354 F. App'x 603, 605-606 (3d Cir. 2009).

As explained in Beers-Capitol, in Eighth Amendment cases based on allegations of deliberate indifference on the part of prison officials or other supervisory defendants, the Supreme Court has "rejected an objective test for deliberate indifference; instead it looked to what the prison official actually knew rather than what a reasonable official in his position would have known." Id. at 131. Specifically, the Supreme Court "held that 'a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety.'" Id. (quoting Farmer, 511 U.S. at 837). This requirement of actual

knowledge on the part of supervisory officials "means that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer, 511 U.S. at 837).

At the same time, this subjective standard does not insulate officials from liability where such officials choose to remain deliberately indifferent to an excessive or substantial or serious risk of harm to inmates. The Supreme Court explained:

> We are no more persuaded by petitioner's argument that, without an objective test for deliberate indifference, prison officials will be free to ignore obvious dangers to inmates. Under the test we adopt today, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm would actually befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.

Farmer, 511 U.S. at 842. The Supreme Court also noted that a supervisory defendant's knowledge of a risk may be proved through circumstantial evidence, so that "a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id.

The appellate courts recognize that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. See, e.g, Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005). Instead, the Court of Appeals has interpreted Farmer to signal that a plaintiff could make out a deliberate indifference

17

case by showing that prison officials simply were aware of a general risk to inmates in the plaintiff's situation. However, in order to show deliberate indifference in this fashion, a plaintiff would need to come forward with evidence showing a substantial basis for demonstrating that a prison official was deliberately indifferent in the face of information that presented a substantial risk to inmate safety. As the Supreme Court has observed in this context: "If an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was *longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,* and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk *and thus must have known about it*, then such evidence would permit a trier of fact to find that the defendant-official had actual knowledge of the risk." Farmer, 511 U.S. at 842-43 (emphasis added).

Courts also recognize a closely related Eighth Amendment cause of action based upon a failure to intervene when others use excessive force, although the contours and parameters of this claim are carefully circumscribed. Thus, the United States Court of Appeals for the Third Circuit considered the question of whether a prison corrections officer has a duty to take reasonable steps to protect a victim from another's use of excessive force in Smith v. Mensinger, 293 F.3d 641 (3d Cir. 2002). Upon consideration of that issue, the Third Circuit held "that a corrections officer's

failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so." Id. at 650. Thus, Smith held that corrections officers may be liable under § 1983 for failing to intervene in an instance of excessive force if they had a reasonable opportunity to do so. Accordingly, following Smith the Eighth Amendment is implicated only in a narrow class of failure-to-intervene claims. To state a valid cause of action "in a case where an inmate claims an officer had a duty to take reasonable steps to protect a victim from another officer's use of excessive force, the inmate must prove that (1) the officer had a duty to intervene; (2) the officer had the opportunity to intervene; and (3) the officer failed to intervene. Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir.2002)." Knauss v. Shannon, CIV. 1:CV-08-1698, 2010 WL 569829 (M.D. Pa. Feb. 12, 2010).

Thus, factual issues relating to the knowledge and intent of prison staff often lie at the heart of any Eighth Amendment failure to protect or failure to intervene claim. Frequently, such matters may not be determined on the pleadings alone, and in this instance Shelton's counsel has expressly asserted that the plaintiff requires some factual discovery in order to address these issues, which are crucial to Shelton's claims, and this motion for summary judgment. Given that " it is well established that a court 'is obliged to give a party opposing summary judgment an adequate

opportunity to obtain discovery,'" <u>Shelton v. Bledsoe</u>, 775 F.3d 554, 565-66 (3d Cir. 2015), and mindful that: "[i]f discovery is incomplete, a district court is rarely justified in granting summary judgment, unless the discovery request pertains to facts that are not material to the moving party's entitlement to judgment as a matter of law," <u>Shelton v. Bledsoe</u>, 775 F.3d 554, 568 (3d Cir. 2015), we conclude that some limited and focused discovery should be undertaken before the parties pursue summary judgment on these claims.

Likewise, any argument that the defendants are generally entitled to summary judgment in their favor because their actions were shielded by qualified immunity is hobbled by the same basic consideration which prevent us from reaching the merits of these Eighth Amendment claims as a matter of law. In this case, disputed material issues of fact which have not been fully developed through discovery prevent us from reaching a judgment as a matter of law on the question of qualified immunity.

To be sure, government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999); <u>see also</u> <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009). This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit."

Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.)

(citations omitted).  Qualified immunity

> balances two important interests – the need to hold public officials
> accountable when they exercise power irresponsibly and the need to
> shield officials from harassment, distraction, and liability when they
> perform their duties reasonably.  The protection of qualified immunity
> applies regardless of whether the government official's error is "a
> mistake of law, a mistake of fact, or a mistake based on mixed questions
> of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given

case, require a court to undertake two distinct inquiries.  First, the court must evaluate

whether the defendant violated a constitutional right.  Saucier v. Katz, 533 U.S. 194,

201-02 (2001), abrogated in part by Pearson, 555 U.S. 223; Curley v. Klem, 499 F.3d

199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006).  If the

defendant did not actually commit a constitutional violation, then the court must find

in the defendant's favor.  Saucier, 533 U.S. at 201.  If the defendant is found to have

committed a constitutional violation, the court must undertake a second, related

inquiry to assess whether the constitutional right in question was "clearly established"

at the time the defendant acted.  Pearson, 555 U.S. at 232; Saucier, 533 U.S. at 201-02.

The Supreme Court has instructed that a right is clearly established for purposes of

qualified immunity if a reasonable state actor under the circumstances would

21

understand that his conduct violates that right.  Williams, 455 F.3d at 191 (citing Saucier, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." Wilson, 526 U.S. at 615.  The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." Hope v. Pelzer, 536 U.S. 730, 741 (2002) (quoting United States v. Lanier, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)).  In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Wilson, 455 F.3d at 191 (quoting Hope, 536 U.S. at 741).

"[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff)." Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996).  Moreover, where that factual record reveals disputed material issues of fact regarding what the officer could reasonably believed to have been true at the time of the events at issue, we are cautioned by the court of appeals that "the jury 'determines disputed historical

facts material to the qualified immunity question[,]' and . . . th[e] 'District Courts may use special interrogatories to allow juries to perform this function,' id. (citing Curley I, 298 F.3d at 279) [but it has been] emphasized that '[t]he court must make the ultimate determination on the availability of qualified immunity as a matter of law.' Id" Curley v. Klem, 499 F.3d 199, 210 (3d Cir. 2007).  Indeed, this principle applies with particular force to Eighth Amendment claims, where any qualified immunity or merits assessment entails an analysis of multiple, discrete factual considerations.  See Curley v. Klem, 499 F.3d 199, 210 (3d Cir. 2007).

Likewise, questions regarding whether conducts transgresses the Eighth Amendment often entails an assessment of whether the defendants displayed deliberate indifference to an inmate's safety.  Thus, these cases can turn of questions of knowledge, intent and motive.  When confronting a claim of qualified immunity which is premised upon factual disputes regarding human motivation we are reminded that:  "Although qualified immunity is a question of law determined by the court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury.  See Johnson v. Jones, 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (qualified immunity may turn on disputed issues of fact); Karnes v. Skrutski, 62 F.3d 485, 491 (3d Cir.1995) ("While the qualified immunity defense is frequently determined by courts as a matter of law, a jury should decide disputed

factual issues relevant to that determination."). Motive is a question of fact that must be decided by the jury, which has the opportunity to hear the explanations of both parties in the courtroom and observe their demeanor. See Mitchell v. Forsyth, 472 U.S. 511, 529, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (improper intent is a pure question of fact); Walker v. Horn, 286 F.3d 705, 710 (3d Cir.2002)." Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006).

Here, the plaintiff's counsel has averred that he has not been able to undertake discovery which would inform any legal judgment regarding these issues of knowledge, motive and intent. Given the dictates of Rule 56(d) and the prior guidance provided by the appellate court, summary judgment on this defense would also be premature at this time. Instead, we should defer further consideration of the merits of these legal issues until after appropriate and measured discovery has been conducted.[5]

---

[5]In reaching this recommendation, we emphasize for the parties the narrow scope of our recommendation. We are nether foreclosing nor endorsing any of the claims or defenses advanced in this motion or lawsuit. We are simply recommending that the plaintiff be permitted discovery relating to these matters before these issues may be considered ripe for summary judgment.

We also commend to counsel for the plaintiff the need for much greater clarity in identifying which parties are named by Shelton as defendants in his individual claims as opposed to the putative class claims for injunctive relief sought by the plaintiff. The conflation of class and individual claims produces confusion here as some parties, including regional or national prison supervisors, may be properly named in a putative class action injunctive relief lawsuit, but are not properly identified as defendants for purposes of an individual claim for

**D.    We Will Stay Discovery While The District Court Considers This Recommendation**

While we recommend that the plaintiff be permitted to engage in some discovery prior to further consideration of the defendants' summary judgment motion, we will by separate order stay discovery pending the district court's consideration and resolution of this recommendation.  We follow this course mindful of the fact that it is undisputed that: " '[t]he grant and nature of [a protective order] is singularly within the discretion of the district court and may be reversed only on a clear showing of abuse of discretion.'  Galella v. Onassis, 487 F.2d 986, 997 (2d Cir.1973) (citation omitted)."  Dove v. Atlantic Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992).  This discretion is guided, however, by certain basic principles.  One of these cardinal principles, governing the exercise of discretion in this field, is that the district court may properly defer or delay discovery while it considers a potentially dispositive pretrial motion, provided the district court concludes that the pretrial motion does not, on its face, appear groundless.  See, e.g., James v. York County Police Dep't, 160

---

damages.  The conflation of individual and class claims may also affect the viability of any prayers for injunctive relief.  Given the analytical problems created by this conflation of claims, we recommend deferring any rulings on issues of personal jurisdiction over the Bureau of Prisons Director or viability of injunctive relief claims. Instead, counsel should be prepared to address this issue specifically, and in detail, with the Court, once the instant motions are resolved.

25

F.App'x 126, 136 (3d Cir. 2005); <u>Nolan v. U.S. Dep't of Justice</u>, 973 F.2d 843,849

(10th Cir. 1992); <u>Johnson v. New York Univ. Sch. of Ed.</u>, 205 F.R.D. 433, 434

(S.D.N.Y. 2002).

Briefly deferring discovery in such a case, while the Court determines the

threshold issue of whether a complaint has sufficient merit to go forward, recognizes

a simple, fundamental truth:  Parties who file motions which may present potentially

meritorious and complete legal defenses to civil actions should not be put to the time,

expense and burden of factual discovery until after these claimed legal defenses are

addressed by the Court.  In such instances, it is clearly established that:

> "[A] stay of discovery is appropriate pending resolution of a potentially
> dispositive motion where the motion 'appear[s] to have substantial
> grounds' or, stated another way, 'do[es] not appear to be without
> foundation in law.' " <u>In re Currency Conversion Fee Antitrust Litigation</u>,
> 2002 WL 88278, at *1 (S.D.N.Y. Jan. 22, 2002) (<u>quoting Chrysler
> Capital Corp. v. Century Power Corp.</u>, 137 F.R.D. 209, 209-10
> (S.D.N.Y.1991)) (<u>citing Flores v. Southern Peru Copper Corp.</u>, 203
> F.R.D. 92, 2001 WL 396422, at *2 (S.D.N.Y. Apr. 19, 2001); <u>Anti-
> Monopoly, Inc. v. Hasbro, Inc.</u>, 1996 WL 101277, at *2 (S.D.N.Y. March
> 7, 1996)).

<u>Johnson v. New York Univ. School of Educ.</u>, 205 F.R.D. 433, 434 (S.D.N.Y. 2002).

Guided by these tenets we will briefly stay discovery pending the district court's

decision regarding this Report and Recommendation since we find that the summary

judgment may be premature but do not conclude that the motion is wholly without

foundation in law.

**IV.   Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED as follows:

1.      The defendants' renewed motion for summary judgment (Docs. 22, 83.),

         should be GRANTED, in part, in that defendants Whitaker and Wells

         should be DISMISSED.

2.      In all other respects the defendants' renewed motion for summary

         judgment (Docs. 22 and 83.) should be DENIED, without prejudice to

         renewal of the motion following pretrial discovery, and that the parties

         should be given leave to conduct discovery focusing on the issues raised

         by the motion, claims and defenses presented by the parties.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own

determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


Submitted this 21st day of March 2016.


**_S/Martin C. Carlson_**
Martin C. Carlson
 United States Magistrate Judge